UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YUMI C. CHEN<br><br>                Plaintiff,<br><br>vs.<br><br>ITW FOOD EQUIPMENT GROUP, LLC.<br><br>                Defendant. | No. 04-12036RWZ |

**JOINT PRETRIAL MEMORANDUM PURSUANT TO LOCAL RULE 16.5**

**I.    CONCISE SUMMARY OF EVIDENCE**

    **A.    Plaintiff's Concise Summary of Evidence**

On August 17, 2001, the plaintiff, Yumi C. Chen, sustained severe and permanent injuries to her right hand while using a Hobart M-802 industrial mixer that was designed, manufactured and distributed by the defendant, ITW Food Equipment Group, LLC.

At approximately 1:15 pm on August 17, 2001, Ms. Chen was using a Hobart M-802 mixer in connection with her duties as a pastry cook at the Ritz-Carlton in Boston, MA. The mixer was running at a lower speed and was not equipped with a bowl guard. Ms. Chen was adding brown sugar into a mixture in the bowl and while the mixer was operating, the bag of sugar that Ms. Chen was holding accidentally fell into the bowl. Ms. Chen pushed the red stop button on the right side of the mixer and waited as the mixing agitator came to a stop so that she could retrieve the bag from the mixture.

At that time, Ms. Chen was momentarily distracted by another employee and inadvertently put her hand into the bowl to retrieve the bag of sugar. When she reached into the bowl, the agitator struck her arm causing severe injuries to Ms. Chen, including a right grade II open ulna fracture which required four surgeries and extensive physical therapy.

According to the records produced by the defendant, the subject Hobart mixer was manufactured in 1981. The mixer was not equipped with a bowl guard at the time it was sold by the defendant. Interlocking barrier bowl guards were available and had been implemented on other machines for decades prior to 1981. In 1994, the defendant made an interlocking barrier guard available as an add-on kit to existing machines. The defendant mailed information concerning the add-on kits to inform known users. The mailing list, however, was compiled solely from service records. There is no record that the defendant ever notified the Ritz Carlton of the availability of this bowl guard add-on kit prior to the accident.

The Hobart mixer was defective and unreasonably dangerous in several ways. First, the defendant failed to furnish the mixer with a braking system to prevent excessive coasting of the agitator after the pushing of the stop button by a user. Second, the defendant failed to furnish the mixer with warnings advising operators of the mixer of the excessive coasting time of the agitator after the stop button was pushed. Third, the defendant failed to furnish the mixer with suitable barrier guards despite the availability of such guards at the time the subject mixer was manufactured and sold by the defendant. Further, the defendant failed to make a concerted and thorough effort to locate all purchasers and/or users of M-802 mixers and advise them of the availability of the add-on bowl guard kit.

As a result of the injuries she sustained in the accident, Ms. Chen has a permanent partial impairment of her right wrist. She sustained permanent loss of stability, motion and rotation in her distal radioulnar joint. She continues to experience pain in her right wrist and is unable to participate in several activities that she enjoyed prior to the accident, including tennis, playing the violin and working as a pastry cook.

### B.  Defendant's Concise Summary of Evidence

On August 17, 2001, the plaintiff, Ms. Yumi C. Chen ("Ms. Chen") was a pastry chef at the Ritz-Carlton Hotel in Boston, Massachusetts. Ms. Chen was an experienced cook, having trained in Europe and the United States, and having worked as a cook for a number of years. At her deposition, Ms. Chen confirmed she was experienced and knowledgeable in the use and operation of commercial food mixers of the type she was using on August 17, 2001. Specifically, Ms. Chen testified she knew her hand and arm could be injured if she reached into the mixing bowl while the mixer was running and the agitator was turning. Having started and stopped mixers on many prior occasions, Ms. Chen also knew that after pressing the "stop" button, the agitator would continue to turn for a short period of time, as it slowed to a stop. She also knew she should wait until the agitator stopped before she reached into the bowl or she could be injured.

On August 17, 2001, Ms. Chen was making a large batch of raisin cookie dough, adding five pound bags of sugar to the cookie dough mixture in the mixing bowl, with the mixer running and the agitator turning. Ms. Chen testified she was startled by her supervisor, Executive Pastry Chef Henry Masterov, when he came into the kitchen and loudly announced himself which caused her to drop the sugar bag into the mixing bowl. As Chef Masterov approached inquiring of her actions, Ms. Chen testified that she pushed the "stop" button, and recalled seeing the agitator begin slowing down. Ms.

3

Chen admits that she reached into the mixing bowl in a hurry to retrieve the sugar bag before the agitator had stopped in order to avoid a reprimand from Mr. Masterov and that her hand contacted the stopping agitator. Ms. Chen's carelessness, reaching into the mixing bowl while the agitator was still turning, knowing she risked injury, was the cause of her accident.

The mixer at issue was made and sold in 1981. In 1994, the defendant, ITW Food Equipment Group, LLC ("ITW") invented a bowl guard, and was assigned a patent for a mixer guard mounting means which was implemented on the manufacture of new mixers. Hobart also, designed and manufactured a mixer bowl guard add-on kit, for previously manufactured mixers and offered these units for sale to owners of Hobart mixers that Hobart knew about. The bowl guard was an interlocked stainless steel cage guard. ITW's service records confirm that ITW sent a written notice of the availability of the additional guarding add-on kit to the Ritz-Carlton in 1994. ITW has no record indicating that the Ritz-Carlton contacted ITW to purchase the additional guarding add-on kit.

ITW's position is that the mixer was reasonably safe for its intended purpose, as designed and configured, when made and sold in 1981. ITW acted reasonably when it contacted the Ritz-Carlton in 1994 advising that the additional guarding add-on kit was available. ITW's position is that, properly adjusted and maintained, the agitator slowed and stopped in a reasonable period of time after pressing the "stop" button. It is also ITW's position that the mixer was not defective, unsafe or unreasonably dangerous due to the absence of a stop button activated brake for the agitator.

ITW disputes the nature and extent of Ms. Chen's injuries. Specifically, ITW disputes Ms. Chen's allegations concerning the permanency of her injuries, including

4

her contentions regarding limitations in her work and non-work activities.

## II. FACTS ESTABLISHED BY PLEADING OR BY STIPULATIONS OR ADMISSION OF COUNSEL

The parties agree to the following facts:

On or about August 17, 2001, the plaintiff, Yumi Chen, was using a Hobart M-802 vertical planetary mixer that was manufactured and distributed by the defendant, ITW Food Equipment Group, LLC. At the time of the accident, Ms. Chen was employed as pastry cook at the Ritz-Carlton, 15 Arlington Street, Boston, MA.

The subject Hobart mixer was manufactured in Troy, OH in 1981. The subject mixer's serial number is 11-277-573.

## III. CONTESTED ISSUES OF FACT

ITW disputes the nature and extent of Ms. Chen's claimed injury. ITW also disputes the cause of the accident, which ITW attributes to Ms. Chen's carelessness. ITW submits that the design and operation of the mixer was reasonably safe when used as intended. ITW submits that it was reasonable in providing written notice to the Ritz-Carlton of the availability of the additional guarding add-on kit, seven years before Ms. Chen's accident.

## IV. JURISDICTIONAL QUESTIONS

None that the parties are aware of at this time.

## V. QUESTIONS RAISED BY PENDING MOTIONS

None.

## VI. ISSUES OF LAW

None that the parties are aware of at this time.

## VII. REQUESTED AMENDMENTS TO THE PLEADINGS

None.

VIII.    ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

The parties have arranged for a joint inspection of the mixer, including operation with a representative exemplar dough mixture, scheduled to be conducted during the week of March 20, 2006. The inspection is necessary because the plaintiff's expert contends the agitator took 12 seconds to come to a stop when he inspected the mixer (in a heated kitchen with an empty mixing bowl) on May 10, 2004, whereas the defendant's experts contend the agitator stopped within a much shorter period when they inspected the mixer (in an unheated storage facility with an empty mixing bowl) on November 16, 2005. The discrepancy came to light with the plaintiff's expert disclosure on December 9, 2005, subsequent production of a videotape of plaintiff's expert's May 10, 2004 inspection and the defendant's subsequent expert disclosure. The scheduled inspection during the week of March 20, 2006 will occur in heated space, with dough in the mixing bowl, in an attempt to narrow the experts' disagreement as to agitator stopping time.

Once the parties conduct the additional mixer inspection, the parties will conduct the deposition of the experts, in an attempt to further narrow the areas of disagreement to be presented to the jury at trial.

IX.    PROBABLE LENGTH OF TRIAL

6 to 7 trial days.

X.    WITNESS LIST

    A.    Plaintiff's Witness List

1.    Yumi C. Chen
     339 South Hicks Street
     Philadelphia, PA19102
     215-735-1690

2. Todd Caruso
   2602 Postgate Lane
   Peabody, MA 01960

3. Henry Masterov
   Former Executive Pastry Chef at the Ritz-Carlton
   Present Address Unknown

4. John M. Orlowski, P.E., CSP, BCFE
   Forensic Engineers & Technologists
   11 Vanderbilt Avenue, Suite 120
   Norwood, MA 02062
   781-762-8377

5. William C. Schlieper
   ITW Food Equipment Group, LLC
   701 South Ridge Ave.
   Troy, OH 45374

6. Jesse Jupiter, M.D. (By Videotape)
   Massachusetts General Hospital - Orthopaedic Hand
   55 Fruit Street
   WAY 2100
   Boston, MA 02114

7. Michael T. Stowell, M.D. (By Videotape)
   Mid-Atlantic Orthopaedic Specialists, PC
   1120A Professional Court
   Hagerstown, MD 21740

**B.    Defendant's Witness List**

In addition to the witnesses identified by the plaintiff in paragraphs two, three and five of Section X.A., the defendant intends to call:

1. S.C. Malguarnera, Ph.D.
   7349 Worthington-Galena Road
   Columbus, OH 43085

2. The defendant has not yet received an expert report and expert disclosure regarding plaintiff's medical expert, Dr. Michael T. Stowell. The defendant reserves the right to identify a medical expert within a reasonable time after receipt of Dr. Stowell's expert report and expert disclosure.

3. Pri*Con Investigations, Inc.
   107 Wayacross Road
   Mahopac, NY 10541

XI. **PROPOSED EXHIBITS**

    A. **Plaintiff's Proposed Exhibits**

The plaintiff expects to introduce the following documents into evidence:

1. Medical Records of Ms. Chen for treatment as a result of the accident

    a. Massachusetts General Hospital; 8/17/01 – 4/18/03

    b. Massachusetts General Hospital Department of Rehabilitation Medicine; 8/18/01 – 7/23/04

    c. Steven Z. Glickel, M.D.; 12/12/01

    d. Jesse Jupiter, M.D.; 1/8/02 – 9/7/04

    e. Bruce Leslie, M.D.; 2/5/04

    f. Joint Active Systems; 10/12/01

    g. West Side Radiology Associates, P.C.; 12/10/01;

2. Medical Bills incurred by Ms. Chen as a result of the accident;

    a. Joint Active Systems..............................................$3,050.00

    b. Integrative Body Therapies.....................................$4,480.00

    c. Boston Medical Center...........................................$396.00

    d. West Side Radiology Associates.............................$662.00

    e. Massachusetts General Hospital............................$22,114.80

        **Total Bills Received to Date..............................$30,720.80**

3. Expert report of John M. Orlowski;

4. Photographs and/or videotapes of the subject mixer;

5. Photographs of the plaintiff, Yumi C. Chen; and

6. Documents produced by the defendant in response to the plaintiff's Rule 34 Requests, including, but not limited, documents listed in the expert report of John Orlowski.

The plaintiff reserves the right to supplement and/or alter this list as the time of trial approaches.

### B. Defendant's Proposed Exhibits

In addition to portions of the plaintiff's medical records set forth in Section XI.A.1.(a.-g.); the defendant intends to introduce:

1. Expert report of S.C. Malguarnera;

2. Expert report of William C. Schlieper;

3. Photographs and/or videotape of the mixer at issue;

4. Videotape and photographs of Ms. Chen taken by Pri*Con Investigations, Inc. on 12/4/05 and other dates;

5. Ms. Chen's Federal tax returns for 2004;

6. Resume of Ms. Chen;

7. Ritz-Carlton employment application of Ms. Chen;

8. Ritz-Carlton Employee Handbook Acknowledgement signed by Ms. Chen.

9. One or more of the documents produced to the plaintiff, by the defendant, specifically including, without limitation, the documents included with the defendant's response to the plaintiff's supplemental request for documents.

## XII. REMIANING OBJECTIONS AS TO PRETRIAL DISCLOSURE REQUIRED BY FED. R. CIV. P. 26(a)(3)

None.

9

| On Behalf of the Plaintiff,<br>Yumi C. Chen<br>By Her Attorneys | On Behalf of the Defendant,<br>ITW Food Equipment Group, LLC<br>By Their Attorneys |
|---|---|
| SUGARMAN & SUGARMAN, P.C. | MARTIN, MAGNUSON, MCCARTHY & KENNEY |
| /s/ David McCormack<br>Robert C. Casby – BBO#07710<br>David P. McCormack – BBO#659006<br>One Beacon Street<br>Boston, MA 02108<br>(617) 542-1000<br>rcasby@sugarman.com<br>dmccormack@sugarman.com | /s/ Douglas Robertson<br>Douglas A. Robertson – BBO #552315<br>101 Merrimac Street<br>Boston, MA 02114<br>(617) 227-3240<br>drobertson@mmmk.com |

Dated: February 22, 2006